**Lisa McDANIEL, Plaintiff,**

v.

**PRINCETON CITY SCHOOL DISTRICT BOARD OF EDUCATION, et al., Defendants.**

No. C–1–98–772.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 12, 2000.

David Gary Latanick, Brenda Redmond, Cloppert Portman Sauter, Latanick & Foley, Columbus, OH, for plaintiff.

Paul Robert Berninger, Amy E Gasser, Wood & Lamping, Cincinnati, OH, for defendants.

### ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff Lisa McDaniel's Motion in Support of Damages and Fees (doc. 18); Defendants Princeton City School District Board of Education and David D. Baker's Memorandum in Opposition to Plaintiff's Motion (doc. 21); and Plaintiff's Reply (doc. 23).

## BACKGROUND

Plaintiff Lisa McDaniel filed this action pursuant to Title 42 U.S.C. § 1983 on October 13, 1998, alleging violations of her right to procedural due process as guaranteed by the United States Constitution, Ohio Revised Code § 3319.16, and a collective bargaining agreement (doc. 1). Defendants Princeton City School District Board of Education and Assistant Superintendent David D. Baker, who acted to terminate Plaintiff's employment on or about April 15, 1997, asserted in defense that they complied with the notice and hearing requirements found in the collective bargaining agreement and that no additional process was due Plaintiff under state or federal law prior to her termination (doc. 9).

Upon cross-motions for summary judgment, this Court observed that procedural due process requires a school board employer to provide a tenured teacher pretermination notice and an opportunity to respond as well as post-termination administrative procedures (doc. 16). The Court then held that Defendants in this case violated Plaintiff's procedural due process rights by discharging her without first providing her proper pretermination notice and the opportunity to be heard (*Id.*). Consequently, on November 18, 1999, the Court granted in part Plaintiff's motion for summary judgment (*Id.*).

Meanwhile, Defendants continued their efforts in a separate action filed by them in the Hamilton County Common Pleas Court to vacate an August 14, 1998 arbitration decision related to Plaintiff's termination (*see* docs. 18 & 23). On August 14, 1998, Harry Berns, an arbitrator for the American Arbitration Association, found that the Princeton City School District acted improperly by terminating Plaintiff and held that the School District lacked just cause to terminate her employment (*Id.*). Mr. Berns also ordered that the Princeton City School District reinstate Plaintiff with full seniority, benefits, and back wages (*Id.*). In December of 1999, the Hamilton Coun-

ty Common Pleas Court upheld Mr. Berns's decision (doc. 23).

Plaintiff now seeks an order from this Court requiring Defendants to reinstate her with full back wages, seniority, and benefits as well as an award of the attorneys' fees and costs incurred in bringing this action (docs. 18 & 23). Defendants argue in response that the sole remedy due Plaintiff for the alleged wrongful termination is reinstatement (doc. 21). On January 18, 2000, Defendants reinstated Plaintiff in her teaching position in the Princeton City School District. The Court now considers whether Plaintiff is entitled to back wages, benefits, and attorneys' fees and costs.

## DISCUSSION

### I. Back Wages and Benefits

■ A prevailing plaintiff in an action brought pursuant to Title 42 U.S.C. § 1983 may recover actual damages, including back wages. *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). The basic purpose of an award of damages in a § 1983 action is "to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus,* 435 U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In *United States v. Burke,* 504 U.S. 229, 239, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), the Supreme Court held that a wrongfully terminated employee is entitled to back wages as well as compensation for lost fringe benefits. Fringe benefits include pension contributions and vacation pay. *Id.; see also Rivera v. Baccarat, Inc.,* 34 F.Supp.2d 870, 875 (S.D.N.Y.1999); *Buckley v. Reynolds Metals Co.,* 690 F.Supp. 211, 220 (S.D.N.Y. 1988). Moreover, defendants may be ordered to compensate plaintiffs for costs incurred in maintaining health insurance coverage. *See id.; see also Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1111 (8th Cir.1994).

■ Nonetheless, a plaintiff must also mitigate damages. *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1119 (6th Cir.1994); *Rolfe v. County Bd. of Educ.,* 391 F.2d 77 (6th Cir.1968). The duty to mitigate is "rooted in an ancient principle of law" and "requires the claimant to use reasonable diligence in finding other suitable employment." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982). A defendant bears the burden of establishing a failure to mitigate. *Meyers,* 14 F.3d at 1119. The Sixth Circuit holds that "[t]o satisfy this burden the defendant must establish that substantially equivalent positions were available and that the plaintiff failed to exercise reasonable care and diligence in seeking those positions." *Id.* In *Glover v. Williamsburg Local Sch. Dis. Bd. of Educ.,* 20 F.Supp.2d 1160, 1175–76 (S.D.Ohio 1988), our sister court held that a plaintiff adequately mitigated his damages by applying for several other teaching positions.

Plaintiff avers that, at the time Defendant unlawfully terminated her employment, she had eighteen years of experience as a teacher and she held a masters degree in special education (doc. 18, Ex. 1, McDaniel Aff.). This experience and education, Plaintiff attests, put her on the highest step of the pay scale in the Princeton City School District (*Id.*). After her termination, though, Plaintiff did not seek another teaching position. Defendants now argue that, by not seeking another teaching position, Plaintiff failed to mitigate her damages. Defendants support their argument with an affidavit from Roger Houck, the personnel director for the Hamilton County Board of Mental Retardation/Developmental Disabilities (hereinafter, "Board"). Mr. Houck attests that he has had difficulty filling the numerous teaching vacancies the Board has had for special education teachers due to a lack of applicants (doc. 21, Ex. A).

Plaintiff asserts, however, that she did not seek another teaching position because the August 14, 1998 arbitrator's decision led her to believe she would be reinstated in her position in the Princeton City School District after a short time. Plaintiff avers

that she did not want to start a new teaching job just to leave it in a few weeks or months. Moreover, Plaintiff contends, she did not believe another school district would have considered her for any of its open positions since she lacked references from her employer of more than twelve years and she had a termination on her record (doc. 18, Ex. 1, McDaniel Aff.). Instead, Plaintiff accepted short-term positions as a receptionist and a sales associate after her termination (McDaniel Dep. at 13–14, 29–30).

Plaintiff further argues that Defendants are responsible for the amount of back wages requested by Plaintiff because of their refusal to reinstate Plaintiff following the arbitration decision. Plaintiff insists that she is entitled to an award of back wages in the amount of $127,070.65. According to Plaintiff, this amount represents her total back wages of $152,994.32 minus her total earnings for 1997, 1998, and 1999 of $25,923.67. Plaintiff emphasizes that Defendants bear the burden of establishing that her back wages request should be reduced due to the availability of other positions of similar nature and pay, and Plaintiff contends that the affidavit of Mr. Houck fails to establish that Plaintiff would have been considered for any of the positions Mr. Houck avers were available between her termination and her reinstatement in the Princeton City School District.

■ Having reviewed this matter, the Court agrees with Plaintiff that Defendants fail to establish that substantially equivalent positions were available in the sensitive field of special education to a teacher who lacked references from a twelve-year employer and who had been terminated for alleged (1) lack of lesson plans; (2) lack of student behavior plans; (3) inappropriate discipline of students; (4) a failure to remain in the classroom; and (5) neglect of duty (*see* doc. 16). Moreover, Defendants fail to show that Plaintiff did not exercise reasonable care and diligence in seeking a new teaching position. The Court finds that Plaintiff's case may be distinguished from *Glover*, 20

F.Supp.2d at 1175–76, because here an arbitrator's decision gave Plaintiff a reason to believe her termination would be short-lived. Plaintiff reasonably sought only short-term jobs so as not to disrupt another special education classroom and so as not to lose the seniority she had built in the Princeton City School District.

In addition, the Court believes this is an egregious case in which a teacher who was unfairly denied her procedural due process rights did what she could to regain her position and reputation. Plaintiff initially sought and received relief in an arbitrator's forum, but Defendants delayed this relief for more than a year by refusing to reinstate her. This delay, together with the allegations against her and the lengthy litigation in both state and federal court, was no doubt devastating to Plaintiff and to her chances of finding another teaching position.

■ This Court maintains broad equitable discretion to construct awards of back wages. *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 669–70 (8th Cir.1992) (citing *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 763, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)). Therefore, in order to fully compensate Plaintiff in a manner that is also fair to Defendants, the Court finds that the award of back wages must be reduced by more than the total of $25,923.67 Plaintiff avers that she earned in 1997, 1998, and 1999. According to Plaintiff's documentation, she earned $8,513 in 1997, $1,900 in 1998, and $15,510.67 in 1999. Because a civil rights plaintiff must not only seek suitable employment but also remain suitably employed, *Delight Wholesale*, 973 F.2d at 670 (citing *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1277 (4th Cir.1985)), the Court finds that any award of back wages in this action must be reduced by an amount that reflects reasonable earnings from short-term positions Plaintiff could have held from the date of her termination to the date of her reinstatement.

Therefore, the Court reduces Plaintiff's back wages in 1998 at an amount equal to her rate of earnings between April 15, 1997 and December 31, 1997 and a reasonable cost of living increase of three percent. Between April 15, 1997 and December 31, 1997, Plaintiff earned $8,513. With that same rate of earnings and the cost of living increase, Plaintiff would have earned $17,536 in 1998. Thus, the Court reduces Plaintiff's back wages for 1998 by a total of $17,536. The Court further reduces Plaintiff's back wages for 1999 by a total of $18,062 to reflect her rate of earnings in 1997 and a reasonable cost of living increase. With this reduction, the total amount of back wages to be awarded drops to $108,883.32. The Court additionally finds that Plaintiff is entitled to recover $21,219.20 in retirement contributions and the $3,371.00 Plaintiff paid in order to extend her health insurance coverage as provided for in the Consolidated Omnibus Budget Reconciliation Act (hereinafter, "COBRA"), Title 29 U.S.C. § 1161 *et seq.* following her April 15, 1997 termination.

## II. Attorneys' Fees and Costs

Title 42 U.S.C. § 1988 allows the prevailing party in a Title 42 U.S.C. § 1983 action to recover attorneys' fees and costs. *Webb v. Board of Educ.,* 471 U.S. 234, 241, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). In the case at bar, the Parties do not dispute whether Plaintiff is a prevailing party as she succeeded in this Court on a significant issue (docs. 21 & 23). *See Farrar v. Hobby,* 506 U.S. 103, 109–111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (holding that a civil rights "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought" to qualify as a "prevailing party"); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (holding that a plaintiff is a prevailing party if the plaintiff succeeds on " 'any significant issue' " that brings a benefit the plaintiff sought) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1978)); *Supreme Court of Virginia et al. v. Consumers Union of the United States et al.,* 446 U.S. 719, 737–38, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (holding same).

The Parties also do not dispute that a plaintiff who prevails in an action addressing procedural due process rights is generally entitled to recover attorneys' fees and costs. *See, e.g., Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1353 (6th Cir.1992) (awarding attorneys' fees and costs to plaintiffs who were terminated without procedural due process); *Williams v. Commonwealth of Kentucky,* Nos. 95–5928, 95–5988, 1997 WL 561369, *13–15 (6th Cir. Sept.9, 1997) (awarding attorneys' fees and costs to a state employee who was demoted without a proper pre-disciplinary hearing).

However, Defendants insist that Plaintiff is not entitled to an award in this particular case because the Ohio Education Association (hereinafter, "OEA"), a nonprofit organization, paid the fees and costs of Plaintiff's private attorneys. Defendants assert that, since organizations that participate as amicus curiae cannot recover fees and costs, *Morales v. Turman,* 820 F.2d 728, 732–33 (5th Cir .1987), the OEA is also precluded from any recovery. Defendants further argue that, even if this Court decides that Plaintiff is still entitled to fees and costs despite her relationship with a non-profit organization, the total hours expended by Plaintiff's attorneys are unreasonably high. Defendants aver that their Cincinnati-based attorneys expended 97.25 total hours on the case, compared with the 273.90 hours expended by Plaintiff's Columbus-based attorneys.

In reply, Plaintiff directs the Court's attention to *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), in which the Supreme Court held that prevailing parties are entitled to recover their fees at the market rate even if a nonprofit legal services organization provided legal services free of charge. In *Blum,* Plaintiff points out, the Court wrote that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Id.*

at 894, 104 S.Ct. 1541; *see also Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); *Johnson v. Lafayette Fire Fighters Ass'n Local 472*, 51 F.3d 726, 732 (7th Cir.1995).

Based on these cases, Plaintiff asserts that she may recover attorneys' fees and costs in order to reimburse the OEA. Plaintiff avers that her attorneys are required by the OEA to reimburse the OEA for all legal fees it incurred on Plaintiff's behalf if Plaintiff recovers an award of attorneys' fees (doc. 23, Ex. A). Furthermore, Plaintiff contends that the time her attorneys spent on the case was not excessive given the nature of the action, the number of depositions and motions involved, the fact that her attorneys worked out of Columbus, Ohio, and the fact that Plaintiff was ultimately successful in her claims for relief.

Having reviewed Plaintiff's Motion and the documentation of fees and costs attached thereto, the Court concludes that (1) Plaintiff is entitled to recover attorneys' fees and costs and (2) the amount requested by Plaintiff's attorneys is reasonable. First, Defendants fail to persuade this Court that Plaintiff is not entitled to an award of attorneys' fees based on her fee arrangement with the OEA. Plaintiff produces evidence indicating that she will be required to reimburse the OEA for the fees and costs expended on her behalf if she recovers under Title 42 U.S.C. § 1988. Therefore, contrary to Defendants' assertion, Plaintiff will not be unjustly enriched by an award of attorneys' fees. The Court also notes that, while the holding in *Blum* refers to the calculation of fees for nonprofit legal services organizations whose attorneys directly represent civil rights plaintiffs, *see Blum*, 465 U.S. at 894–95, 104 S.Ct. 1541, Defendants do not cite any case law distinguishing between nonprofit organizations that directly provide legal services and nonprofit organizations that indirectly provide legal services to civil rights plaintiffs. Having examined § 1988, the Court finds no reason to make such a distinction.

Secondly, Defendants fail to demonstrate that the fees requested by Plaintiff's attorneys are excessive. As the Supreme Court wrote, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933. When considering these factors to reach a loadstar amount, *Id.* at 434, 103 S.Ct. 1933, the Court finds that Plaintiff's Columbus-based attorneys expended a reasonable amount of time on the case and charged reasonable hourly rates. Plaintiff's attorney attached a detailed billing statement to the Motion, which the Court reviewed. The following summary of hours worked and rates charged by the law firm of Cloppert, Portman, Sauter, Latanick & Foley is taken from the billing statement:

| | | | |
|---|---|---|---|
| > | Frederick G. Cloppert | $175/hour × 1.3 hours | $227.50 |
| > | David G. Latanick | $175/hour × 46.05 hours | $8,058.00 |
| > | Brenda J. Redmond | $125/hour × 192.05 hours | $24,006.25 |
| > | Erika Pearsol–Christie | $125/hour × 8 hours | $1,000.00 |
| > | Law Clerk | $40/hour × 23.50 hours | $940.00 |

(doc. 18, Ex. 2). Based on the above billing summary, the firm attorneys and law clerk spent a total of 273.90 hours on the case for a total of $34,231.75 in fees. The firm also incurred $3,247.47 in costs.

In reviewing the billing statement and summary, the Court discovers no excessive, redundant, or otherwise unnecessary hours. The billing rates of Plaintiff's attorneys are likewise reasonable market rates for partners, associates, and law clerks in this area. The Court notes that Defendants also do not dispute the billing rates of Plaintiff's attorneys. Further guiding this Court in our analysis of the fee request is the degree of success we

believe Plaintiff's attorneys achieved through this litigation. *Hensley,* 461 U.S. at 434–37, 103 S.Ct. 1933. In addition, the Court found during the course of this litigation that Plaintiff's attorneys provided her with excellent representation. The Supreme Court wrote in *Hensley* that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435, 103 S.Ct. 1933. The Court concludes that, in this litigation, Plaintiff's attorneys are entitled to a fully compensatory fee.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART Plaintiff's Motion for Damages and Fees and AWARDS Plaintiff $108,883.32 in back wages, $22,565.84 in retirement contributions, $3,371.80 in health insurance costs, and $37,854.97 in attorneys' fees and costs, for a total award of $172,675.93.

SO ORDERED.